IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AKOO INTERNNATIONAL, INC., f/k/a Hellenic Interactive, Inc., an Illinois corporation, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| | ) | No. 10 C 1685 |
| v. | ) ) ) | |
| CLIFFORD J. HARRIS, JR., an Individual, AKOO, LLC, a Georgia limited liability company, RP55, INC., a Virginia corporation, AKOO/RP55 LLC, a Virginia limited liability company, and CASIO AMERICA, INC., a New York corporation, | ) ) ) ) ) ) ) ) | Judge Sharon Johnson Coleman |
| Defendants. | ) | |

**ORDER**

Plaintiff Akoo International, Inc. (AI) seeks a preliminary injunction prohibiting the use of the "Akoo" trademark by defendants Clifford Harris, Akoo, LLC, RP55, Inc., Ralph Reynolds and Casio America Inc. (collectively, the Harris group). Because the evidence presented thus far fails to demonstrate that the parties' concurrent uses of the trademark is likely to cause consumer confusion, the motion is denied.

Background

In August 2004, AI filed a trademark registration application for the word "AKOO" for use with the following goods and services:

Computer software for searching and retrieving information, sites

and other resources on computer networks; computer software for sending streaming media over a computer network; digital juke box, namely computer hardware and software for distributing, selecting and playing audio and video musical information' prerecorded musical sound recordings in digital format.

Providing online retail store services featuring electronics and entertainment related products, namely compact discs featuring music and digitally downloadable music.

Telecommunications services, namely, providing telephone communication services via computer networks; electronic transmission of data, images and documents via computer terminals and networks; broadcasting services, namely radio broadcasting; electronic mail services; providing multiple-user access to a computer information network; providing on-line electronic bulletin boards for transmission of messages among computer users concerning entertainment and other news items; and providing on-line chat rooms for transmission of messages among computer users concerning playing games; providing information about streaming media.

> Entertainment services, namely providing a radio program in the fields of music, news, weather, sports and current events via a global computer network; providing entertainment information in the field of music.
>
> Computer services, namely, providing search engines for obtaining data, namely, various news, radio, video and other sources available on a global computer network; computer services, namely, designing, creating and maintaining web sites for others; hosting the websites of others on a computer server for a global computer network; technical consultation services in the field of hosting the web sites of others to help others develop and maintain a webs site; technical support, namely, troubleshooting of hardware and software problems via e-mail and telephone; providing information about audio and digital technology.

AI's "Akoo" trademark was registered in March 2007. (Amended complaint, Docket #9, Attachment 1, p. 1-2.)

AI's primary business involves the installation of television screens in public places, including shopping malls, restaurants, and universities. AI's screens display music videos and other programming. Those viewing AI screens can select the videos to be displayed by sending messages to AI's network via text message or internet application. (Affidavit of Niko Drakoulis, Docket #12, Att.. 1, pars. 9, 11.) AI pays property owners, such as shopping mall proprietors,

for the right to place its screens in locations such as mall food courts. (Master Lease Agreement, Section 4.1(d), Docket #12, Att. 4, p. 13.) AI then generates revenue by selling advertising on its screens. (Master Lease Agreement, Exhibit B, "Performance Thresholds," Docket #12, Att. 4, p. 51.)

Clifford Harris is a well known rap artist. In January 2007, he filed trademark applications for the word "AKOO" for use with goods described as dress suits, footwear, headwear, jackets, pants, shirts, and short-sleeved or long-sleeved t-shirts. (Amended Complaint, Docket #9, Attachments 4-7.) AI learned of the Harris application, and its representatives contacted Harris' representatives to demand that he abandon his applications. When communications between the parties' representatives failed to resolve their differences, AI filed this action against Harris and the manufacturers involved with him in the marketing and branding of apparel and watches displaying "Akoo" marks. AI seeks relief from the Harris group for trademark infringement, unfair competition, and trademark dilution under federal law, and seeks to cancel the Harris registration for the "Akoo" mark. AI also asserts state law claims against the Harris group for trademark infringement, unfair competition, and deceptive trade practices.

AI seeks a preliminary injunction that prohibits the Harris group from using the "Akoo" mark or assisting its use by others, and from doing any other act that either damages AI's goodwill or induces the belief that the parties are affiliated. AI's request for preliminary injunctive relief is based solely upon its federal trademark infringement claim. (Plaintiff's Reply, Docket # 97, p. 1.)

Preliminary Injunction Standards

A party seeking to obtain a preliminary injunction must demonstrate that its case has a better than negligible chance of success on the merits; that it has no adequate remedy at law; and that it will suffer irreparable harm if the injunction is not granted. *Ty, Inc. v. Jones Group, Inc.,* 237 F.3d 891, 895 (7th Cir. 2001). To establish the necessary probability of success on the merits of a trademark infringement claim, a party seeking to enjoin alleged infringement must show that it has a protectable trademark and that there is a likelihood of confusion as to the origin of the defendant's product. *Ty, Inc.,* 237 F.3d at 897.

The Harris group contends that AI's interest in the "Akoo" mark is not protectable because of its failure to consistently use the mark in commerce. But the record at this stage indicates that AI applied to register the mark in 2004, that its registration was approved in 2007, and that the Harris group concedes that its own use of the mark "commenced in 2008." (Defendants' Response, Docket #70, p. 14 of 31.) These facts suggest that AI's prospects of proving the protectability of the mark are better than negligible. *Meridian Mutual Insurance Co. v. Meridian Insurance Group,* 128 F.3d 111, 1115 (7th Cir. 1997).

The remaining component of a trademark infringement claim, the likelihood that the allegedly infringing mark's use will cause confusion, is analyzed by a review of seven factors: (1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree and care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any actual confusion; and (7) the intent of the defendant to "palm off" his product as that of another. *AutoZone, Inc. v. Strick,* 543 F.3d 923, 929 (7th Cir. 2008). No single factor is dispositive, and although the similarity of

the marks, the defendant's intent, and actual confusion are generally considered particularly important, the weight to be given each factor is dependent upon the facts presented. *Id.*

The evidence presented indicates that both parties registered the word "AKOO" in standard format and use the mark without any consistently unique style. This court thus concludes that the similarity of marks factor weighs strongly in favor of AI.

The product similarity factor, however, weighs strongly in favor of the Harris group. AI emphasizes that Harris is well known because of his rap music, and that he promotes himself and his Akoo wear in music videos and on his music website. AI asserts that it is the Harris group's use of the mark "in connection with music that gives rise to its infringement." (Plaintiff's Reply, Docket #97, p.5.)

But Harris' use of music and video to promote Akoo-branded clothes, without more, does not create similarity between his products and those of AI. The record does not suggest that AI creates music or clothing, or that it sells either item to consumers. AI's evidence of individuals wearing clothing bearing its brand is thus far limited to photos that appear to depict its employees staffing its display booths at trade shows (Memorandum In Support Of Preliminary Injunction Motion, Docket #12, Att. 12, p. 4-6). The use of similar trademarks on such promotional materials does not create a likelihood of customer confusion. *Sullivan v. CBS Corp.,* 385 F.3d 772, 779 (7th Cir. 2004).

The record suggests that AI provides an advertising platform rather than a product similar to Harris' clothing line or music. AI's television screens, network connections and software produce an electronic billboard. The billboard displays entertainment content created by third parties to attract viewers who will also be shown marketing content provided by sponsors who

pay AI.  The billboard platform that AI offers to advertisers does not appear to be in any way similar to the clothes sold by the Harris group.  AI correctly notes that competing marks for dissimilar products may nonetheless cause confusion if the products are the kind that consumers might attribute to a single source (see *Meridian Mutual Insurance Co. v. Meridian Insurance Group,* 128 F.3d at 1116; *International Kennel Club of Chicago v. Mighty Star, Inc.,* 846 F.2d 1079, 1089 (7th Cir. 1988).)  But AI has not presented evidence that consumers would expect a clothing line and an electronic advertising platform to be created by the same producer, and this court is unaware of any basis for presuming any such link.  Accordingly, at this stage of the proceeding, there is no basis for a conclusion that any similarity between the parties' products would create a likelihood of customer confusion.

Analysis of the area and manner of concurrent use of the parties' products also weighs against a finding of likely customer confusion.  AI sells advertising broadcasts, and displays those broadcasts along with entertainment programming.  Although AI has presented evidence that its television screens broadcast in the food court areas of some shopping malls where retailers sell the Harris group's clothing, there is no evidence of any overlap between the clothing sales and AI's ad sale process.

The customer care factor weighs against a finding of likely confusion.  The record contains minimal evidence of the degree of care that can be expected from potential purchasers of the Harris group's clothing.  In contrast, AI has presented evidence that its advertising customers are sophisticated corporate entities who are attracted to the AI platform by detailed survey data showing the number of viewers attracted to AI's broadcast screens and the effectiveness of the AI broadcasts in creating lasting impressions upon those viewers.  (Reply In

7

Support Of Motion, Docket #97, Att. 21.)  This evidence suggests that AI's customers invest great care in the expenditure of their advertising dollars, and that they are not likely to be confused by the existence of an "Akoo" clothing mark.  See *Rust Environment & Infrastructure, Inc. v. Teunissen,* 131 F.3d 1210, 1217 (7th Cir. 1997).

On the current state of the record, the strength of mark factor weighs in favor of the Harris group.  In analyzing the strength of a mark, a court may evaluate its strength outside its area of use.  If the mark is used only in a narrow area, others may use a similar mark for different goods without causing infringing confusion.  *Sullivan v. CBS Corp.,* 385 F.3d 772, 776 (7th Cir. 2004).  AI has offered no evidence of any long-standing recognition of its mark, or of its impact outside of AI's specific business channel.  AI attempts to establish the strength of its mark with survey evidence demonstrating the number of individuals who recalled the "Akoo" name, but its survey was compiled from "viewers," who are apparently those who were asked about the mark only after seeing AI's mall broadcasts (Docket #97, Att. 21, p. 9 of 11).  Such surveys do not assess recognition of AI's mark in the general population of consumers who have not seen their broadcasts, and do not indicate mark strength outside AI's area of commerce.  The evidence of the strength of AI's mark thus suggests that AI's is sufficiently narrow to permit uses of similar marks for different products without customer confusion.

The court considers the "palming off" factor to be related to the strength of mark factor, and concludes that this factor also weighs in favor of the Harris group.  The evidence presented at this point of the proceedings does not suggest that AI's use of the "Akoo" mark had achieved any widespread notoriety that would have prompted the Harris group to attempt to capitalize on the AI identity.  Indeed, AI's own pleadings suggest that its complaint with the Harris group is

not that the Harris group's merchandise misappropriates AI's fame, but that Harris' notoriety and adverse publicity directs unwanted attention to AI.  Accordingly, although the Harris group was aware of AI's use of the "Akoo" mark, the record does not support an inference that the group was motivated to apply the same mark to its clothing in order to create the false impression that its goods were created by AI.

Finally, the actual confusion factor weighs moderately in favor of AI.  It has presented evidence that it received calls and inquiries from individuals attempting to contact the Harris group. Although such evidence is entitled to weight in assessing the likelihood of confusion, that weight is lessened when those shown to be confused are not customers.  *CAE, Inc. v. Clean Air Engineering, Inc.,* 267 F.3d 660, 686 (7th Cir. 2001).  AI's evidence here does show a likelihood that some potential customers of the Harris group might be confused as to how to contact Harris or to locate his merchandise.  But the evidence does not suggest that Harris customers are aware of AI and mistake the Harris clothing for AI products, or that AI's customers are in any way confused about the identity of the parties.

## Conclusion

This court concludes that in assessing the likelihood of confusion caused by the Harris group's use of the "Akoo" mark,  the dissimilarity of the AI and Harris group products, the lack of overlap between the marketing and sale of their products, the sophistication and care of AI's customers, the lack of evidence of confusion by AI customers, the lack of evidence of strength of the AI mark outside its particular business channel, and the lack of evidence of any intent by the Harris group to create an impression that its clothing was created by AI combine to outweigh the identity of the competing marks and the evidence of actual confusion by potential Harris

9

customers. AI has thus failed to show a likelihood of confusion as a result of the Harris group's use of the mark. For this reason, this court further concludes that AI has not shown the required likelihood of success on the merits of its trademark infringement claim.

AI's motion for preliminary injunction is therefore denied.

So ordered. September 9, 2011

_____
Sharon Johnson Coleman
District Judge